## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **LARRY WALKUP and** | : | |
| **BETTY WALKUP,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | |
| **VS.** | : | **Civ. Action No. 1:12-cv-01635-SLR-SRF** |
| | : | |
| | : | |
| **FOSTER WHEELER ENERGY,** | : | |
| **CORPORATION,  ET AL.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## DEFENDANT FOSTER WHEELER ENERGY CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

**SWARTZ CAMPBELL LLC**

Beth E. Valocchi, Esq.
Patrick M. Brannigan, Esq.
300 Delaware Avenue, Suite 1410
Wilmington, DE 19801
302-656-5935
Attorneys for Foster Wheeler

Dated: December 27, 2012

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF RELEVANT FACTS ........................................................... 2

ARGUMENT ..................................................................................................... 5

    I.     PLAINTIFFS' REMAND APPLICATION SHOULD BE DENIED IN ORDER
         TO PROTECT THE UNIQUE FEDERAL ISSUES AT STAKE IN THIS CASE
         .................................................................................................. 5

         A.  Foster Wheeler Meets the Requirements of § 1442(a)(1) and Jurisdiction
              Is Proper in This Court ...................................................................... 6

         B.  Foster Wheeler has Established it "Acted Under" the Color of
              Federal Authority ............................................................................... 6

         C.  Foster Wheeler has Asserted a Colorable Federal Defense ..................... 7

              1.  The Navy Exercised Its Discretion Over the Type and
                   Content of Warnings .......................................................... 9

                   a.  J. Thomas Schroppe ................................................ 10

                   b.  Admiral Ben J. Lehman ............................................ 10

              2.  Foster Wheeler Conformed to the Navy's Specifications ............. 14

              3.  The Navy Knew More About the Hazards of Asbestos
                 Than Foster Wheeler ......................................................... 14

          D.  Foster Wheeler has Demonstrated a Causal Nexus Between
              the Federal Direction and the Conduct At Issue ................................ 16

    II.    PLAINTIFFS' EVIDENTIARY OBJECTIONS ARE BASELESS
         AND WITHOUT MERIT ............................................................. 17

CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

## Cases

Akin v. Ashland Chemical Co.,
156 F.3d 1030 (10th Cir. 1998) ............................................................................ 6

Akin v. Big Three Indus., Inc.,
851 F. Supp. 819 (E.D. Tex. 1994) ......................................................................... 6

Allen v. General Electric Co.,
Case No. 3:09-cv-00497-JCH (D.Conn. Aug. 27, 2009) ......................................... 16

Arizona v. Manypenny,
451 U.S. 232 (1981) ................................................................................................ 5

Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.,
883 F.2d 1210 (3d Cir. 1989) ................................................................................. 15

Bouchard v. CBS Corporation,
Case No. 11-66270 (E.D. Pa. Apr. 17, 2012) ......................................................... 16

Boyle v. United Technologies Corp.,
487 U.S. 500 (1988) ................................................................................................ 8

Butler v. Ingalls Shipbuilding, Inc.,
89 F.3d 582 (9th Cir. 1996) ................................................................................... 19

Corley v. Long-Lewis Inc.,
688 F.Supp.2d 1315 (N.D. Ala., 2010) ................................................................... 10, 16

Curry v. American Standard, Inc., et al.,
08-cv-10228 (GBD)(S.D.N.Y. Feb. 6, 2009) .......................................................... 10, 16

Demarco v. General Electric Co.,
No 09-00373-PCD (D. Conn. May 29, 2009) .......................................................... 16

Feidt v. Owens Corning Fiberglass Corp.,
153 F.3d 124 (3d. Cir. 1998) .................................................................................. 9

Fellows v. Foster Wheeler,
Case No. 1:09-cv-10015-JG (N.D.Ohio Aug. 21, 2009) ......................................... 16

Freiberg v. Swinerton & Walberg Prop. Servs., Inc.,
245 F. Supp. 2d 1144 (D. Colo. 2002) ................................................................... 6

Good v. Armstrong World Indus., Inc.,
914 F. Supp. 1125 (E.D. Pa. 1996) ........................................................................ 7

Hagen v. Benjamin Foster Co.,
Civ. Action. No. 07-63346 (E.D. Pa. Sept. 24, 2010)........................................................... passim

Hagen v. Benjamin Foster Co.,
739 F.Supp.2d 770 (E.D. Pa. 2010) ..................................................................................... 1

Hilbert v. McDonnell-Douglas,
529 F.Supp. 2d 187 (D.Mass 2008) ................................................................................. 9, 14

Iacobelli Constr. Inc. v. County of Monroe,
32 F.3d 19 (2d Cir. 1994)...................................................................................................... 18

In re Joint Eastern and Southern Dist. New York Asbestos Litig.,
897 F.2d 626 (2d Cir. 1990).................................................................................................. 9

Jefferson County v. Acker,
527 U.S. 423 (1999)............................................................................................................... 17

Kerstetter v. Pacific Scientific Co.,
210 F.3d 431 (5th Cir. 2000) ................................................................................................ 12

Kirks v. General Electric Co.,
654 F.Supp.2d 220 (D. Del. 2009).................................................................................... 1, 10

Lauria v. Nat'l Railroad Passenger Corp.,
145 F.3d 593 (3d Cir. 1998).................................................................................................. 18

Lewis v. Asbestos Corp. Ltd.,
Case No. 10-650 FLW (D.N.J. Aug. 8, 2012) .................................................................... 16

Lewis v. Babcock Industries, Inc.,
985 F.2d 83 (2nd Cir. 1993).................................................................................................. 14

Machnik v. Buffalo Pumps,
506 F.Supp.2d 99 (D. Conn. 2007)....................................................................................... 16

Marley v. Elliot Turbomachinery Co.,
545 F.Supp.2d 1266 (S.D. Fla. 2008) ................................................................................ 8, 10

Nelson v. Foster Wheeler, et al.,
CV07-8338VBF (RCx) (C.D.Cal. February 8, 2008) ......................................................... 16

Nesbiet v. General Electric Co.,
399 F.Supp.2d 205 (S.D.N.Y. 2005)............................................................................ 11, 12, 14

Oliver v. Oshkosh Truck Corp.,
96 F.3d 992 (7th Cir. 1996) ............................................................................................... 9, 13

Prewett v. Goulds Pumps,
2009 WL 2959877 (W.D. Wash. 2009) ................................................................................ 17

Reaser v. Allis Chalmers Corp.,
2:08-cv-01296-SVW-SS (C.D.Cal. June 23, 2008) ............................................................ 15, 18

Ruppel v. CBS Corporation,
2012 U.S. App. LEXIS 24625 (7th Cir. 2012) ............................................................ 15

Ryan v. Dow Chemical Co.,
781 F. Supp. 934 (E.D.N.Y. 1992) ............................................................ 6

Shepherd v. Air & Liquid Systems Corp,
2012 U.S. Dist. LEXIS 166735 (2012) ............................................................ 1, 8

Tamarin v. Adam Caterers, Inc.,
13 F.3d 51 (2d Cir. 1993) ............................................................ 18

Tate v. Boeing Helicopters,
55v F.3d 1150 (6th Cir. 1995) ............................................................ 9

Tate v. Boeing Helicopters,
140 F.3d 654 (6th Cir. 1998) ............................................................ 13

Tennessee v. Davis,
100 U.S. 257 (1880) ............................................................ 5

United States v. Velasquez,
64 F.3d 844 (3d Cir. 1995) ............................................................ 18

United States v. Webb,
115 F.3d 711 (9th Cir. 1997) ............................................................ 18

Willingham v. Morgan,
395 U.S. 402 (1969) ............................................................ 5

Willis v. BW IP Int'l, Inc.,
............................................................ 8

## PRELIMINARY STATEMENT

As a manufacturer of boilers and economizers for the United States Navy, among other equipment, Foster Wheeler Energy Corporation ("Foster Wheeler") removed this matter based upon the federal officer removal statute. 28 U.S.C. §1442(a)(1). There are important federal interests, recognized by Congress, the United States Supreme Court and various federal courts around the country, *including this Court* and the United States District Court for the Eastern District of Pennsylvania ("MDL-875" or "The MDL Court"), implicated by the claims asserted by plaintiffs in this action against Foster Wheeler. Plaintiffs conveniently fail to reference this Court's ruling in Kirks v. General Electric Co., 654 F.Supp.2d 220 (D. Del. 2009)(Exhibit 1), presumably because this Court upheld removal of an identical asbestos injury action based on the Federal Officer Removal Statute, 28 U.S.C. §1442(a)(1). Plaintiffs also ignore the significance of the MDL Court's landmark decision in Hagen v. Benjamin Foster Co., 739 F.Supp.2d 770 (E.D. Pa. 2010)(Exhibit 2). The MDL Court, to which asbestos personal injury actions are routinely transferred[1] for effective pretrial management, and which was principally created for the central purpose of promoting judicial efficiency and consistency, has unambiguously denied remand in cases involving virtually identical evidence as that presented in the instant action. In fact, the District of Rhode Island, in Shepherd v. Air & Liquid Systems Corp, recently acknowledged that in denying remand in a similar asbestos action, it was guided by the MDL Court's "well-reasoned," "substantive" and "particularly persuasive" ruling in Hagen, precisely because the MDL Court "has dealt with thousands of similar cases from across the country." See Shepherd, 2012 U.S. Dist. LEXIS 166735 at *69 (Exhibit 3).

---

[1] As of November 23, 2011, the asbestos MDL court decided to accept tag-along asbestos cases from only a limited number of jurisdictions. According to Judge Robreno, the District of Delaware is one of several jurisdictions that has benefitted greatly from the transfer and consolidation of cases in the MDL, but can now supervise and adjudicate its own asbestos cases.

This Court is not called upon to dissect the facts stated in the evidence submitted by Foster Wheeler, but is simply being asked to determine whether it has jurisdiction to hear a government contractor's rightful defense to plaintiffs' claims.   Foster Wheeler **need only demonstrate a colorable or plausible claim**, as opposed to prove and win its case at this early stage of the litigation.  Foster Wheeler is entitled to proceed in this Court based on the allegations against it in this case that are premised on its acts performed pursuant to the directions of a federal officer.

## STATEMENT OF RELEVANT FACTS

Plaintiffs Larry Walkup and Betty Walkup served Foster Wheeler with their Summons and Complaint on November 1, 2012.  See Plaintiffs' Complaint attached hereto as Exhibit 4. The Complaint included allegations that Mr. Walkup was injured as a result of exposure to asbestos while employed as an engineman in the United States Navy aboard the USS Lorain County from 1959 to 1962.  Id.  Foster Wheeler confirmed that it manufactured the marine boilers on the USS Lorain County, all designed by the Navy and purchased for the Navy, for use on that vessel.  It is undisputed that Foster Wheeler filed a timely Notice of Removal.

In manufacturing equipment for the Navy, Foster Wheeler acted under the direction of federal officers, is entitled to a federal defense arising out of its official duties, and can demonstrate the causal connection between that which Foster Wheeler did under federal direction and plaintiff's alleged injuries.

Through various affidavits now advanced in opposition to remand, Foster Wheeler establishes, among many other facts concerning the direct and complete control exercised by the Navy over Foster Wheeler with respect to its boilers and economizers, the following facts:

1.  Foster Wheeler manufactured and supplied boilers and related auxiliary equipment,

including economizers for Navy ships under contracts between Foster Wheeler and the United States of America, Navy Department or contracts between Foster Wheeler and shipyards that contracted with the United States of America, Navy Department. (See Affidavit of J. Thomas Schroppe,[2] dated December 18, 2009, attached to Notice of Removal papers as Exhibit 5 ("Schroppe Affidavit"), at ¶4 and ¶7.)

2.  The Navy was responsible for all phases of the design of a vessel ("Ship Specs") as well as all specific components of the boilers and auxiliary equipment including economizers ("Mil Specs").  Naval officers supervised, enforced and approved Foster Wheeler's compliance with the plans and specifications for its boilers.  (Id., at ¶5 and ¶7.)

3.  A Navy officer supervised Foster Wheeler's production of boilers and economizers for Navy vessels and exercised direct control over all aspects of Foster Wheeler's production of this equipment for Navy vessels.  As manufactured and shipped by Foster Wheeler to the Navy, Foster Wheeler's equipment did not have any asbestos-containing thermal insulation on them.  (Id. at ¶15 and ¶16).  Indeed, the Navy expressly delegated responsibility for the delivery and installation of thermal insulation and lagging on machinery to the shipbuilder.  (See Affidavit of Lawrence Stilwell Betts, MD, PhD, CIH, FACOEM,[3] dated September 27, 2006 ("Betts Affidavit"), attached hereto as Exhibit 6 at ¶6.)

4.  The Navy had complete control over every aspect of each piece of equipment used on its ships.  This control included what warnings should or should not be included.  The Navy controlled the decision making with respect to instructions and warnings on every piece of equipment.  (See Affidavit of Admiral Ben J. Lehman,[4] U.S. Navy, Ret., dated July 12, 2007 ("Lehman Affidavit"), attached hereto as Exhibit 7, at ¶10)

5.  The Navy was intimately involved and had final approval of all technical and engineering drawings, operating manuals and safety or hazard information that accompanied a piece of equipment.  The Navy determined the nature of hazards subject to any precautionary labeling and the content of any such labeling.  The Navy dictated every aspect of the written documentation and warnings associated with its ships and did not permit deviation by any of its contractors.  (See Lehman Affidavit at ¶11)

6.  The Navy, not Foster Wheeler, determined the nature of hazards to be subject to any precautionary labeling and the content of any specified labeling.  It was the Navy, not

---

[2]  Schroppe holds a Marine Engineering degree and was a Third Assistant Engineer for American Export Lines.  He was employed by Foster Wheeler for thirty-seven years and was, among other jobs, President of Foster Wheeler Boiler Corporation.  This affidavit updates information concerning Mr. Schroppe's experience(See ¶ 1).

[3]  Betts is a retired United States Navy Captain and qualified surface warfare medical department officer. He is board certified in Occupational Medicine and Industrial Hygiene.

[4]  Lehman is a retired United States Navy Rear Admiral with naval architectural design and marine engineering expertise who served as, among other jobs, Ship Superintendent and Dry Docking Officer at the New York Naval Shipyard [formerly the Brooklyn Naval Shipyard], and Ship Superintendent at the San Francisco Naval Shipyard.

Foster Wheeler, who determined the nature of any warnings to be affixed to any Foster Wheeler equipment placed on a Navy vessel.  (See Schroppe Affidavit at ¶22)

7.   The information possessed by the Navy with respect to the specification and use of asbestos insulation and health hazards associated with the use of asbestos insulation on Navy vessels far exceeded any information concerning the hazards of asbestos insulation used onboard a Navy vessel that could have been provided by Foster Wheeler to the Navy. (See Betts Affidavit at ¶31).

8.   There was no information concerning any asbestos hazard or danger posed by any asbestos-containing product applied to any machinery on a Navy ship known by Foster Wheeler that was not known to the United States and the Navy. (Id.)

Foster Wheeler's evidence establishes that the Navy "exercised discretion" regarding the design of its equipment and type and content of warnings to be placed on Foster Wheeler's products and in its technical manuals.  For instance, Captain Arnold P. Moore, a retired Naval Captain on which asbestos plaintiffs frequently rely, has on more than one occasion, acknowledged that Foster Wheeler and the Navy engaged in a back-and-forth process during which the Navy thoroughly reviewed Foster Wheeler's technical manuals, and provided comments and insight where necessary before eventually accepting the manuals:

Q. And with respect to the manual, there was a process of approval for that manual by the Navy, right?

A. And I – I believe you're asking about a manufacturer's technical manual.  And yes, these documents we talked about do require manufacturers to submit them to the Navy for approval.  Typically, as I talked about, the manufacturers would provide them to the shipyard.  And the shipyard, in turn, would provide them to the Navy.  But the Navy, would have a chance to review them and make comments against them.

Q.  And in the instance of Foster Wheeler…there is a series of documents we could pull out of files showing the back-and-forth between Foster Wheeler and the Navy regarding getting the Navy's approval for the manual, fair?

A. Certainly, **the Navy would have final approval authority over the manual.  And as you have described, <u>it was a very interactive process</u> between the Navy and the manufacturer in developing the manual.  The manufacturer developed the manual, then the Navy would review it and make suggestions for improvements.  And, ultimately, they would agree before the manual is issued.**

(See Trial Testimony of Arnold Moore ("Moore Testimony") in Curry v. American Standard, Inc., 08-civ-10228, January 11, 2011, 267:11-25, 268:15-25, attached hereto as Exhibit 8).

These facts set forth in the affidavits submitted in opposition to this remand application mandate that this Court exercise its jurisdiction over this action, as Foster Wheeler will demonstrate that it is entitled to assert the government contractor defense.

## ARGUMENT

I. **PLAINTIFFS' REMAND APPLICATION SHOULD BE DENIED IN ORDER TO PROTECT THE UNIQUE FEDERAL ISSUES AT STAKE IN THIS CASE**

The Supreme Court has long recognized that the operations of the federal government would be arrested if federal agents were held accountable in a State court for actions taken within the scope of their federal authority.   See Tennessee v. Davis, 100 U.S. 257, 263 (1880). Congress enacted the removal provisions of §1442(a)(1) of Title 28 of the United States Code to ensure the existence of "a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties."   Arizona v. Manypenny, 451 U.S. 232, 242 (1981). The right to removal under this section is "*absolute* whenever a suit in a state court is [brought] for any act 'under color' of federal office."   Willingham v. Morgan, 395 U.S. 402, 406 (1969) (emphasis added).   The most important function of removal is to allow a federal court to determine the validity of the asserted official immunity defense. Willingham, 395 U.S. at 407

The test for removal is broader, not narrower, than the test for official immunity. Willingham, 395 U.S. at 405.   A defendant need not win its case before it can be removed. Willingham, 395 U.S. at 407.   The defendant need only articulate the colorable applicability of the federal defense to plaintiffs' claims to establish federal jurisdiction. See Hagen generally.

### A.     <u>Foster Wheeler Meets the Requirements of §1442(a)(1) and Jurisdiction Is Proper in This Court</u>

In order to remove a case to federal court under §1442(a)(1), a defendant must establish (a) that it acted under the direction of a federal officer or agency, (b) that it has a colorable federal defense, and (c) that there is a causal nexus between the federal direction and the conduct at issue. <u>See</u> <u>Mesa</u>, 489 U.S. at 132-134. Foster Wheeler has submitted evidence that the actions that form the basis of plaintiffs' claims were performed under the direction of federal officers, that it has a colorable federal defense to the asserted claims and that there is a causal nexus between the federal direction and the actions which give rise to plaintiffs' claims, including design defect and failure to warn allegations. Foster Wheeler's removal of this action to federal court was, therefore, proper and plaintiffs' motion for remand must be denied.

### B.     <u>Foster Wheeler has Established that it "Acted Under" the Color of Federal Authority</u>

To demonstrate that a defendant was "acting under" the direction of a federal officer, the defendant must show that the acts forming the basis of the state suit were performed pursuant to an officer's "direct orders or comprehensive and detailed regulations." <u>Freiberg v. Swinerton & Walberg Prop. Servs., Inc.</u>, 245 F. Supp. 2d 1144, 1152 (D. Colo. 2002), <u>citing</u> <u>Ryan v. Dow Chemical Co.</u>, 781 F. Supp. 934, 947 (E.D.N.Y. 1992). This may be established by demonstrating strong government involvement in the acts that led to the claim and by establishing that defendant could be sued in state court based on the actions taken pursuant to federal direction. This requirement is satisfied when a government contractor builds a product pursuant to military specifications and is later sued because compliance with those specifications allegedly caused personal injuries. <u>Isaacson</u>, 304 F. Supp. 2d at 448, <u>citing</u> <u>Akin v. Big Three Indus., Inc.</u>, 851 F. Supp. 819 (E.D. Tex. 1994), <u>removal aff'd by</u> <u>Akin v. Ashland Chemical Co.</u>,

156 F.3d 1030 (10th Cir. 1998).

In the context of a failure to warn suit, a defendant acts under a federal officer where his or her actions that led to the lawsuit were based on a "federal officer's direct order or comprehensive and detailed regulations."  Hagen, 739 F.Supp. 2d at 784 (citing Good v. Armstrong World Indus., Inc., 914 F. Supp. 1125, 1128 (E.D. Pa. 1996).  The evidence advanced by Foster Wheeler in support of its removal demonstrates that it was "acting under" the direction of a federal officer.  See Exhibit 5, Schroppe Aff. at ¶¶4, 15-16, and 20, and Exhibit 6, Lehman Aff. at ¶¶10 and 11.  This evidence, which demonstrates the active and direct control by the Navy over Foster Wheeler with respect to every aspect of the design, manufacture and delivery of its boilers and economizers, including the Navy's absolute control over any warnings permitted to be placed on a Foster Wheeler boiler or economizer delivered with them, has been found by federal courts across the country, including this Court, to demonstrate that Foster Wheeler, and government contractors like Foster Wheeler, were acting under the direction of a federal officer. See Kirks v. General Electric Co.; O'Connell v. Foster Wheeler, 544 F.Supp.2d 51 (D. Mass. 2008); Riddle v. Various Defendants, Civ. Action No. 11-00318 (E.D. Pa. Aug. 9, 2011); Hagen; Marley v. Elliot Turbomachinery Co., 545 F.Supp.2d 1266 (S.D. Fla. 2008); Curry v. American Standard, Inc., et al., 08-cv-10228 (GBD)(S.D.N.Y. Feb. 6, 2009.

### C.    Foster Wheeler has Asserted a Colorable Federal Defense

A defendant must assert a colorable federal defense in order to remove an action to federal court.  Courts have found that this requirement should be interpreted broadly and does not require a showing that the defense asserted is likely to succeed.  See Jefferson County v. Acker, 527 U.S. 423, 431 (1999), 149 F.3d at 400, citing Willingham.  Since the purpose of the defense *is simply to supply subject matter jurisdiction* to the court, any federal defense will suffice.  Id.

Plaintiffs, however, clearly misunderstand the difference between the requisite showing at the removal stage, which most courts have established should not be an onerous one to satisfy, and the standard of proof during the summary judgment or trial phase of any litigation.  Plaintiffs presume that the latter standards apply at this juncture.  This assumption is critically flawed.  The MDL Court squarely addressed the distinction in Willis v. BW IP Int'l, Inc., noting that "[t]he standard for establishing the government contractor defense as a basis for removal, where defendant must point to facts which, viewed in the light most favorable to defendant, would establish a complete defense at trial, *is on the opposite spectrum from the standard for proving the government contractor defense as an affirmative defense at the summary judgment stage*, where a defendant must show the absence of a genuine issue of material fact and that it is entitled to the government contractor defense as a matter of law." Willis, 811 F.Supp.2d 1146, 1148 (E.D. Pa. 2011)[emphasis added]; see more recently Shepherd, 2012 U.S. Dist. LEXIS at *75-76 (removing defendants are not subject to the burdens of *Rule 56*); Marley, 545 F.Supp. 2d at 1272, n.3 (the summary judgment standard is "obviously significantly higher than the colorable defense standard" required to support removal of a case to federal court).

§1442(a)(1) shields government contractors from liability in state court for defects in equipment supplied to the United States when (1) the United States approved reasonably precise specifications, (2) the equipment conformed with these specifications, and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.  Boyle v. United Technologies Corp., 487 U.S. 500, 512 (1988).

It is well established that the government contractor defense articulated by the Supreme Court in Boyle, a design defect case, operates to defeat a state failure to warn claim.  Hagen, at

pg. 28 (although <u>Boyle</u> applied the government contractor defense to a design defect products liability claim, courts have recognized the defense's applicability to failure to warn claims like plaintiff's)[citing <u>Oliver v. Oshkosh Truck Corp.</u>, 96 F.3d 992, 1003 (7th Cir. 1996) ("[W]hen state law would otherwise impose liability for failure to warn, that law can be displaced…"); <u>Hilbert v. McDonnell Douglas Corp.</u>, 529 F.Supp.2d 187, 199 (D.Mass 2008)("Each category [of the <u>Boyle</u> analysis] translates to the failure-to-warn context"); <u>Tate v. Boeing Helicopters</u>, 55 F.3d 1150, 1157 (6th Cir. 1995) ("the rational for applying the government contractor defense to a failure to warn claim tracks <u>Boyle</u> analysis closely"); <u>Feidt v. Owens Corning Fiberglass Corp.</u>, 153 F.3d 124, 127 (3d. Cir. 1998) (district court properly considered the government contractor defense as a basis for removal of plaintiff's failure to warn claim)].  <u>See also</u> <u>Butler v. Ingalls Shipbuilding, Inc.</u> 89 F.3d 582, 586 (9th Cir. 1996); <u>In re Joint Eastern and Southern Dist. New York Asbestos Litig.</u>, 897 F.2d 626, 629 (2d Cir. 1990).  Thus, in response to a failure to warn claim, a manufacturer asserting the government contractor defense must simply ***articulate facts*** establishing: (1) the United States exercised its discretion and approved the warnings, if any; (2) the contractor provided warnings that conformed to the approved warnings; and (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not.  <u>Hagen</u>, 739 F.Supp. 2d at 783 (<u>citing</u> <u>Tate</u>, 55 F.3d at 1157; <u>Oliver</u>, 96 F.3d at 1003-1004).

     1.    <u>The Navy Exercised Its Discretion Over the Type and Content of Warnings</u>

The uncontroverted evidence from Admiral Lehman and Schroppe demonstrates that the Navy provided Foster Wheeler with precise and detailed specifications that governed every aspect of the design, manufacture and delivery of the boilers and economizers at issue in this case, including any warnings or written information that could accompany the Foster Wheeler

boilers and economizers.  This type of evidence has been found to satisfy the first prong of the

modified-Boyle test.  See Kirks, Hagen, Marley; Corley Wright at p. 9; Curry, at p. 3; Pantalone,

576 F.Supp.2d at 331; Salamante, at p. 7; Nelson, at p. 6.

      **a.**       **J. Thomas Schroppe**

Foster Wheeler has submitted affidavits that are not speculative or conclusory opinions,

but are accurate attestations by experienced naval officers and Foster Wheeler personnel

concerning the Navy's strict scrutiny over all equipment manufactured by Foster Wheeler for the

Navy, including warnings affixed on these products.  Plaintiffs proffer self-serving, misleading

and incomplete excerpts of Schroppe's deposition testimony, that offer no insight whatsoever

into the intricate contractual relationship between the Navy and Foster Wheeler, Foster

Wheeler's obligations pursuant to procurement contracts with the Navy or the detailed review

process undertaken by the Navy.  Schroppe, who affirms that he was "personally familiar with

the degree of supervision and control exercised by the Navy" in procurement contracts, avers

that:

> The Navy exercised intense direction and control over all written documentation to be
> delivered with its naval boilers such as engineering drawings, test reports and other
> technical data that could be used as needed by shipboard engineering officers during the
> life of the equipment.  See Exh. 5, Schroppe Aff., at ¶ 21.

> The Navy required that every piece of equipment be supplied with a defined number of
> copies of one or more technical manuals.  Navy personnel participated intimately in the
> preparation of this kind of information and exercised specific direction and control over
> its contents.  These manuals included safety information related to the operation of naval
> boilers and economizers only to the extent directed by the Navy.  Id.

> The Navy had precise specifications and procedures that governed the content of any
> communication affixed to machinery supplied by Foster Wheeler to the Navy.  Id. at ¶ 22.

      **b.**       **Admiral Ben J. Lehman**

Corroborating Schroppe's averments, Admiral Lehman details the level of control

asserted by the Navy over all aspects of the equipment, including written materials, and emphasizes adhering to the Navy's exacting directives:

> Military specifications governed every significant characteristic of the equipment used on U.S. Navy ships, including the instructions and warnings.  Drawings for nameplates, the tests of instruction manuals, and every other document relating to construction, maintenance, and operation of the vessel was approved by the U.S. Navy.  This control included the decision of which warnings should or should not be included.  <u>See</u> Exh. 7, Lehman Aff., at ¶ 10.

Even Admiral Lehman's deposition testimony, which plaintiffs condemn, demonstrates precisely the type of "exercise of discretion" by the Navy that the modified-<u>Boyle</u> test requires with respect to failure to warn claims:

> Q. What happens in an instance – what is the Navy's views to anything that disrupts the normal operations of this ship?

> A. That is unacceptable.

> Q. Why?

> A. Well, if you – the normal operation of the ship has to fulfill specific operational requirements, which requires jobs for every crew, everybody, to be in the condition, all the required materials, tools, everything to be there, and if there is any discontinuity in that whole system, the ship cannot operate properly.

> Q. What is wrong – why couldn't [a government contractor like] GE, General Electric just tell the Navy, look, we are telling you that every turbine is going to have a plaque that warns people about asbestos, whether you like it or not?  Why couldn't GE do that?

> A. Because the Navy would say we won't accept the equipment because the equipment does not comply with the specifications.

> Q. Would the Navy have accepted, in your experience, equipment with a warning label plaque on it not approved by the Navy?

> A. No.

(<u>See</u> Exhibit 9, Excerpts of Deposition of Ben J. Lehman, taken in <u>Nesbiet v. General Electric Co.</u>, 399 F.Supp.2d 205 (S.D.N.Y. 2005), at 56-57.)

Lehman's deposition testimony buttresses the averments made in his affidavit, namely, that while both the Navy and an equipment manufacturer like Foster Wheeler benefitted from a collaborative and substantive back-and-forth negotiation and exchange, the Navy ultimately retained control over everything that went on its ships, from every inch of the design of the equipment, all written materials that accompanied the equipment that was manufactured pursuant to its strict and exacting specifications, down to the size of the plaque to be affixed onto the equipment. In fact, the Nesbiet court determined that the milspec MIL-M-15071 series, also cited by plaintiffs in this case, *supported* rather than undercut Lehman's affidavit demonstrating that the content of instruction manuals was subject to approval by the Navy.  Nesbiet, 399 F.Supp.2d at 209.

There is no question that Foster Wheeler has produced evidence establishing that the Navy was **intimately involved** with both the design of its equipment and the labeling of equipment on its ships, along with the information that was allowed to accompany any piece of equipment. Foster Wheeler's evidence demonstrates, and even proves, that the government did not simply accept Foster Wheeler's equipment without substantive review or evaluation.  At this early stage of proceedings, when parties are merely trying to establish whether this Court can hear plaintiff's claims, Foster Wheeler need only **articulate facts** stating that the government "exercised its discretion" regarding the design of its equipment and **warnings in general** to be placed on Foster Wheeler's equipment, and such warnings need not be specific to the hazards of asbestos.  See Kerstetter v. Pacific Scientific Co., 210 F.3d 431, 438 (5th Cir. 2000)(first element satisfied when Navy approved, changed and edited warnings in manual, and although manual contained no express evaluation of warning of specific hazard, the government contractor defense applies because Navy exercised discretion in approving warnings in manual) cert.

denied, 531 U.S. 919 (2000); <u>Tate v. Boeing Helicopters</u>, 140 F.3d 654, 656 (6th Cir. 1998)(where government knowledge and concern are exercised through the review process, it may be fairly said that the government has decided which warnings should and should not be provided to end users); <u>Oliver v. Oshkosh Truck Corp.</u>, 96 F.3d 992, 1004 (7th Cir. 1996)(government's approval must go beyond merely "rubber stamping" the contractor's choice), <u>cert. denied</u>, 520 U.S. 1119 (1997).

In fact, Captain Moore, a retired Naval captain on which asbestos plaintiff frequently rely, has acknowledged that Foster Wheeler and the Navy engaged in a back-and-forth process during which the Navy thoroughly reviewed Foster Wheeler's technical manuals, and provided comments and insight where necessary before eventually accepting the manuals:

> Q. And with respect to the manual, there was a process of approval for that manual by the Navy, right?
>
> A. And I – I believe you're asking about a manufacturer's technical manual. And yes, these documents we talked about do require manufacturers to submit them to the Navy for approval. Typically, as I talked about, the manufacturers would provide them to the shipyard. And the shipyard, in turn, would provide them to the Navy. But the Navy, would have a chance to review them and make comments against them.
>
> Q. And in the instance of Foster Wheeler…there is a series of documents we could pull out of files showing the back-and-forth between Foster Wheeler and the Navy regarding getting the Navy's approval for the manual, fair?
>
> A. Certainly, **the Navy would have final approval authority over the manual. And as you have described,** <u>**it was a very interactive process**</u> **between the Navy and the manufacturer in developing the manual. The manufacturer developed the manual, then the Navy would review it and make suggestions for improvements. And, ultimately, they would agree before the manual is issued.**

<u>See</u> Exhibit 8, Moore Trial Testimony, at 267:11-25, 268:15-25. Thus, even Captain Moore expressly confirmed during his trial testimony that the Navy did not merely "rubber-stamp" any technical manual submitted by Foster Wheeler. Rather, as clearly evidenced in Moore's statements, the Navy "exercised its discretion" when it approved, changed and edited warnings in

Foster Wheeler's manual.  The Navy quite simply decided which warnings should and should not

be provided to end users.

2.     Foster Wheeler Conformed to the Navy's Specifications

Conformity with the specifications, the second prong of the modified-<u>Boyle</u> test, may be

established by the acceptance and use of the item by the Navy.  <u>See</u>, <u>Lewis v. Babcock Industries,

Inc.</u>, 985 F.2d 83, 86 (2nd Cir. 1993).  A defendant will meet its burden under the second element

of the test if it can demonstrate that any deviation from the government's specifications would

likely have resulted in rejection of the equipment.   <u>O'Connell</u>, 544 F.Supp.2d at 55 (<u>citing

Nesbiet v. General Electric Co.</u>, 399 F.Supp.2d 205, 212 (S.D.N.Y. 2005); <u>Hilbert v. McDonnell-

Douglas</u>, 529 F.Supp. 2d 187, 198, n.11 (D.Mass 2008). Each boiler manufactured by Foster

Wheeler for the Navy went through an acceptance trial and was only accepted by the Navy after

any deficiencies were corrected by Foster Wheeler.  <u>See</u> Schroppe Aff., at ¶20.  The affidavits

submitted by Foster Wheeler establish that Foster Wheeler would not be permitted to include

"any type of warning or caution statement" (Schroppe Aff. at ¶22), and the Navy controlled "the

decision of which warnings should or should not be included." <u>See</u> Lehman Aff. at ¶10.  <u>See

Hagen</u>, 739 F.Supp.2d at 774.  Accordingly, the evidence advanced by Foster Wheeler has been

found to satisfy the second prong of the modified-<u>Boyle</u> test.  <u>Id.</u>

3.     The Navy Knew More About the Hazards of Asbestos Than Foster Wheeler

In order to satisfy the third prong of the test, Foster Wheeler needs to advance evidence

demonstrating that it warned the United States about the dangers in the use of the equipment that

were known to it but not the United States.  <u>Hagen</u>, at pg. 30.  The defense does not require

Foster Wheeler to warn the government where "the government knew as much or more than the

defendant contractor about the hazards of the…product." Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co., 883 F.2d 1210, 1216 (3d Cir. 1989).

Here, Foster Wheeler has advanced evidence that there were no dangers about the use of asbestos-containing insulation on boilers that were known to it but not the United States. (See generally, Exhibit 6, Betts Affidavit)[5] at ¶32. Foster Wheeler has undoubtedly demonstrated, especially at this very early stage of proceedings, that the Navy possessed superior knowledge about the health hazards of asbestos.

The analysis undertaken by the courts that have denied remand of both similar and identical actions should lead to the denial of remand in this case. See Recently Ruppel v. CBS Corporation, 2012 U.S. App. LEXIS 24625 (7th Cir. 2012)(Exh. 10); Kirks (Exh. 1); Hagen (Exh. 2). Furthermore, Foster Wheeler need not unequivocally establish that the Navy directly prohibited Foster Wheeler from placing warnings on the boilers and economizers it manufactured according to the Navy's specifications in order to justify removal. See O'Connell, 544 F.Supp.2d at 58., n. 12 (D.Mass. 2008)(Exh. 11)(while citations to regulations or contractual provisions barring warnings would certainly be sufficient to state a colorable claim, the weight of the cases suggest that there is no "strict requirement that the government 'prohibit' warnings altogether or 'dictate' the contents of the warnings actually incorporated."); Reaser v. Allis Chalmers Corp., 2:08-cv-01296-SVW-SS (C.D.Cal. June 23, 2008) (GE not required to provide actual contracts to illustrate reasonably precise specifications by the Navy prohibiting warnings, and need not prove its federal defense to justify removal) (Exh. 12); see also Lewis v. Asbestos Corp. Ltd., Case No. 10-650 FLW (D.N.J. Aug. 8, 2012)(Exh. 13); Bouchard v. CBS Corporation, Case No. 11-66270 (E.D. Pa. Apr. 17, 2012)(Exh. 14); Nesbiet, 399 F.Supp. 2d at 212-13 (Exh. 15);

---

[5] Foster Wheeler has also advanced compelling evidence that the Navy dictated what warnings could be provided by Foster Wheeler and dictated the content of any warning Foster Wheeler was permitted to provide.

Machnik v. Buffalo Pumps, 506 F.Supp.2d 99, 103 (D. Conn. 2007)(Exh. 16); Curry (Exh. 17);

Wright (Exhibit 18); Fellows v. Foster Wheeler, Case No. 09- 10015-JG (N.D.Ohio Aug. 21,

2009)(Exh. 19); Allen v. General Electric Co., Case No. 09- 00497-JCH (D.Conn. Aug. 27,

2009)(Exh. 20); Salamante v. Quintec Indus., Inc., CV08-4674 PA (JTLx)(C.D. Cal. Sept. 22,

2008)(Exh. 21); Nelson v. Foster Wheeler, et al., CV07-8338VBF (RCx) (C.D.Cal. Feb. 8,

2008)(Exh. 22); Demarco v. General Electric Co., No 09-00373-PCD (D. Conn. May 29,

2009)(Exh. 23); Corley v. Long-Lewis, Inc., 688 F.Supp. 2d 1315, 1334 (N.D. Ala. 2010)(Exh.

24).

At this stage of the litigation, the parties are merely seeking to determine whether this

Court has jurisdiction to hear plaintiffs' claims.  Foster Wheeler has established that jurisdiction

in this Court is proper, and has demonstrated that it is improper for this Court to require Foster

Wheeler to produce, and for this Court to consider detailed contracts and specifications showing

that the Navy prohibited Foster Wheeler of warning plaintiff of the hazards of asbestos.  Foster

Wheeler has established a colorable, if not complete, federal defense to plaintiffs' claims.  That is

all that is required of it at this stage of this case, and plaintiffs' motion to remand should be

denied.

### D.        Foster Wheeler has Demonstrated a Causal Nexus Between the Federal Direction and the Conduct At Issue

Evidence demonstrating that Foster Wheeler satisfied the warning prong of the modified-

Boyle test has been advanced in support of Foster Wheeler's opposition to remand. The evidence,

at a minimum, raises a colorable federal defense and demonstrates the causal connection between

that which Foster Wheeler did under federal direction and plaintiff's failure to warn claim.  See

Hagen ("resolving the causal nexus requirement is not difficult in light of the court's colorability

determination because the causal nexus analysis "is essentially the same as [that associated with]

the colorable defense requirement"). <u>Id.</u> at pg. 33 (<u>citing</u> <u>Prewett v. Goulds Pumps</u>, 2009 WL 2959877, at *3 (W.D. Wash. 2009). Nothing more is needed to establish federal jurisdiction. Foster Wheeler does not have to win its case before it can have it removed. <u>Jefferson County</u>, 527 U.S. at 431.


## II.     PLAINTIFFS' EVIDENTIARY OBJECTIONS ARE BASELESS AND WITHOUT MERIT

With broad, sweeping and unsupported conclusions, plaintiffs suggest that the affidavits submitted by Foster Wheeler contain numerous defects, and are conclusory, speculative, inadmissible and not based on personal knowledge. Plaintiffs primarily rely on Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert testimony, to suggest that J. Thomas Schroppe and Admiral Ben Lehman's ("affiants") statements as to whether the Navy would have approved a warning about the hazards of asbestos had Foster Wheeler proposed such a warning constitute speculation and conjecture, and are thus inadmissible. Plaintiffs also cite to Rule 1002, the "Best Evidence" rule, to bar Schroppe's and Lehman's statements about contracts that allegedly have not been produced. Both objections have been considered and rejected by other district courts, and plaintiff's misapplication of both rules highlights a significant disconnect between plaintiff's reasoning and that of established law.

Plaintiffs ask this Court to apply a <u>Daubert</u>-style "scientific reliability" standard to expert testimony *that is not scientific or technical in nature*, but rather, stems from the affiants' background and training, personal knowledge and observations, and practical work experience, including their comprehensive familiarity with the Navy's practices in equipment procurement contracts. It is well established, however, that it is entirely inappropriate to employ the <u>Daubert</u> analysis outside the scientific context, and that the <u>Daubert</u> test is too stringent a rule to be

applied in considering whether to admit the expert testimony of non-scientific or non-technical experts.  See Iacobelli Constr. Inc. v. County of Monroe, 32 F.3d 19, 25 (2d Cir. 1994)(Daubert clarified standards for evaluating scientific knowledge *only* and, therefore, does not apply to exclude affidavits of geotechnical and underground-construction experts retained to summarize and interpret voluminous, technical data); Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 53 (2d Cir. 1993)(as Daubert specifically dealt with the admissibility of scientific evidence, accountant's affidavit summarizing his review of payroll records not inadmissible); see also Lauria v. Nat'l Railroad Passenger Corp., 145 F.3d 593, 599 (3d Cir. 1998); United States v. Velasquez, 64 F.3d 844, 850 (3d Cir. 1995)(not appropriate to apply Daubert for scientific expert testimony to the field of handwriting analysis), citing United States v. Webb, 115 F.3d 711, 716 (9th Cir. 1997)(Daubert's standards "simply do not apply" to experts with specialized knowledge);.

The United States District Court for the Northern District of California also considered the arguments plaintiffs raise in this motion and found sufficient Schroppe's and Lehman's knowledge regarding general Navy practices, as they relate to the Navy's contracts with its contractors, regardless of whether that knowledge extended to the time period during which the plaintiff alleges he was injured.  See Wright (Exh. 12), at p.5 ("evidence regarding general navy practices, as it relates to the Navy's contracts with Foster Wheeler, is both relevant and appropriate" and **"[t]he fact that the declaration pre-dates the inception of the suit does not undermine the relevance of the practices testified to**, all of which occurred prior to the date the declaration was signed.")(emphasis added); Reaser (Exh. 18)(declarations describe typical Navy specifications and offer explanations as to why warnings about asbestos would not have been permitted).

Additionally, Plaintiffs claim that the declarations are inadmissible per the "best evidence

rule." Fed. R. Evid. 1002. This argument also lacks merit because Schroppe and Admiral Lehman are not trying to "prove the content of a writing," but rather they are relying on their independent knowledge and familiarity regarding Navy specifications in making their assertions. In denying plaintiff's motion to remand, the Reaser court emphasized that the declarations made by Admiral Lehman and Cushing "describe[d] general naval policies and shipbuilding practices, and illustrate[d] the lack of discretion given to government contractors in supplying equipment to [N]aval vessels." Id.

In this case, there can be no dispute as to the admissibility of Schroppe's or Lehman's affidavits. First, Admiral Lehman undoubtedly qualifies as an 'expert' under Rule 702. Plaintiffs ignore the fact that Admiral Lehman began his career as the Ship Superintendent and Planning Officer at the Brooklyn Navy Yard in 1942, well before the relevant time period. See Exhibit 7, Lehman Aff., at ¶ 1. Throughout his career, including his promotion to Rear Admiral in 1977, Admiral Lehman maintained close contact with the Navy including periods of active duty in the Department of Defense and the Naval Sea Systems Command. Id. Lehman also affirms that he has personal knowledge of the Navy's "complete control over every aspect of each piece of equipment...including the instructions and warnings." Id. at ¶ 4. Plaintiff's argument fails, as Admiral Lehman has personal and historical knowledge regarding Navy practices, as they relate to its contracts with Foster Wheeler. Further, plaintiff's characterization of Admiral Lehman's testimony as "speculative" is quite simply flawed. Admiral Lehman offers truthful testimony concerning the Navy's strict scrutiny over all equipment manufactured by Foster Wheeler for the Navy, including warnings affixed on these products and in its technical manuals.

Second, Thomas Schroppe holds a Marine Engineering degree and was a Third Assistant

Engineer for American Export Lines.  He was employed by Foster Wheeler for thirty-seven years and was, among other jobs, President of Foster Wheeler Boiler Corporation.  Schroppe affirms that he is "personally familiar with the degree of supervision and control exercised by the Navy and its agencies in procurement contracts with Foster Wheeler for boilers and auxiliary equipment because [he] was personally involved in such contracts at all the various stages of development."  See Exhibit 5, Schroppe Aff., at ¶ 1.

There are no deficiencies in the form or substance of the affidavits submitted in the instant case in support of removal.  The unfounded and broad array of objections to the affidavits submitted by Foster Wheeler reflects plaintiffs' attempt to distract this Court from the well-founded principle that a federal contractor like Foster Wheeler complied with the government's applicable military specifications regarding the type and content of warnings that could be placed on their equipment and in accompanying manuals. The affidavits sufficiently support Foster Wheeler's government contractor defense.  Schroppe and Lehman's affidavits derive from personal knowledge and extensive experience with government procurement contracts.

Plaintiffs have failed to establish legitimate grounds upon which the affiants' testimonies should be excluded, and thus, their arguments are without merit.

## <u>CONCLUSION</u>

For all of the reasons set forth herein, it is respectfully requested that plaintiff's Motion to Remand and Motion to Strike be denied.

Respectfully submitted,

SWARTZ CAMPBELL LLC

*/s/ Beth E. Valocchi*
Beth E. Valocchi (DE No. 2294)
Patrick M. Brannigan (DE No. 4778)
300 Delaware Avenue, Suite 1410
Wilmington, DE 19801
302-656-5935

Dated: December 27, 2012                Attorneys for Foster Wheeler Energy Corp.