## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

LARRY WALKUP and                    )
BETTY WALKUP,                       )
                                    )
        Plaintiffs,                 )
                                    )
        v.                          )       Civil Action No. 12-1635-SLR-SRF
                                    )
AIR & LIQUID SYSTEMS CORP.,         )
a/k/a BUFFALO PUMPS, INC., et al.,  )
                                    )
        Defendants.                 )

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

Presently before the court in this asbestos-related personal injury action are the motions for summary judgment of Defendants Nash Engineering Company ("Nash") (D.I. 208), and Air & Liquid Systems Corporation ("Buffalo Pumps") (D.I. 238) (collectively, "Defendants"). The Plaintiffs, Larry Walkup and Betty Walkup ("Plaintiffs"), oppose Defendants' motions. (D.I. 266; D.I. 268) For the reasons that follow, I recommend that the court GRANT Nash's motion for summary judgment, and GRANT Buffalo Pumps' motion for summary judgment.

### II.   BACKGROUND

#### A. Procedural History

Plaintiffs filed this action against a number of defendants on June 14, 2012, in the Superior Court of Delaware. (D.I. 279, Ex. 1) On August 14, 2012, Nash and Buffalo Pumps, among others, were added as defendants in Plaintiffs' First Amended Complaint. (D.I. 1, Ex. A) The Complaint asserts various causes of action arising out of Larry Walkup's alleged exposure to asbestos throughout his employment and through personal construction work. (*Id.*, Ex. A ¶¶ 47-49)

1

On December 3, 2012, the case was removed to this court by Defendant Foster Wheeler Energy Corporation, pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute.[1] (D.I. 1) Plaintiffs filed a Motion to Remand on December 18, 2012. (D.I. 13) On September 26, 2013, a Report and Recommendation was entered denying Plaintiffs' Motion to Remand (D.I. 128), which the court subsequently adopted on October 24, 2013 (D.I. 161). *See Walkup v. Air & Liquid Sys. Corp.*, 2013 WL 5448623, at *1 (D. Del. Sept. 26, 2013), *report and recommendation adopted*, 2013 WL 5798701, at *1 (D. Del. Oct. 24, 2013).

Nash and Buffalo Pumps filed the pending motions for summary judgment individually on February 14, 2014. (D.I. 208; D.I. 238) The motions were fully briefed by March 2014. (D.I. 279; D.I. 280) On May 21, 2014, the court held oral argument on the motions.

## B. Facts

Plaintiffs allege that Larry Walkup ("Mr. Walkup") was exposed to asbestos while serving in the U.S. Navy as a shipfitter and engineman on the USS Lorain County from 1959 to 1962.[2] (D.I. 1, Ex. A ¶ 47; D.I. 266, Ex. A at 27) Mr. Walkup was responsible for maintaining equipment on the ship. (D.I. 266, Ex. A at 37, 42-43, 47, 48)

The USS Lorain County had four engine rooms. (D.I. 268, Ex. A at 41) Mr. Walkup worked on ballast pumps in engine room number two, and boilers, evaporators, and valves in engine room number four. (*See Id.*, Ex. A at 41-42; D.I. 280, Ex. B at 157-58, 162-66) He also performed work in the ship's distillery plant, and two rooms near engine room number two,

---

[1] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

[2] The Complaint asserts that Mr. Walkup was exposed to asbestos in a number of other settings (*see* D.I. 1, Ex. A ¶ 47), but those allegations are not relevant to the pending motions for summary judgment.

which housed pumps. (D.I. 268, Ex. A at 41-42)

Part of Mr. Walkup's job duties included the removal and replacement of gaskets in various pumps. (D.I. 266, Ex. A at 37, 42-43, 47, 48) Most of the gaskets were allegedly made of asbestos, while others were made of neoprene or rubber. (*Id.*, Ex. A at 46-47, 48-49, 53-54) In some instances, repairs were performed using premade gaskets supplied by the same manufacturer as the pump, otherwise, gaskets were fabricated by Mr. Walkup and his fellow enginemen. (*Id.*, Ex. A at 49-51) Mr. Walkup removed gaskets from pumps using air-powered wire brushes. (*Id.*, Ex. A at 45-46) This activity made the air very dusty, and Mr. Walkup breathed the dust. (*Id.*, Ex. A at 47)

### 1. Defendant Nash

Initially, during his first deposition in August 2012, Mr. Walkup testified that he remembered working with pumps and gaskets from various manufacturers, including Nash. (*Id.*, Ex. A at 43, 51) Specifically, Mr. Walkup testified as follows:

Q.   What kind of pumps would you work on?
A.   We had a variety of pumps onboard that ship. I think we had Nash. We had Gorman-Rupp. We had some Byron Jacksons. I was trying to think. We had some Goulds, and I think that's about all I can remember right now that I know for a fact without guessing.

(*Id.*, Ex. A at 43)

Q.   You mentioned some brands of pumps you worked on. Do you remember any others?
A.   Not onboard the ship I don't.
Q.   Okay. So you said Nash, Byron Jackson?
A.   Yeah.
Q.   Any others that occur to you?
A.   Well, onboard ship was mostly Nash, Gorman-Rupp, Goulds, Byron Jackson.

(*Id.*, Ex. A at 51)

Q.      Okay. What brands of gaskets, to your recollection, did you work with on the ship well as an engineman?

A.      As an engineman, we worked with the name brands, which some of them that's -- they, you know came -- we bought them or the Navy procured them, --

Q.      Uh-huh.

A.      -- and they went with the pumps, if it was a Nash or if it was whatever.

Q.      Okay.

A.      But if we had to make it, it would either most likely be Garlock or Chesterton or something. Chesterton was mostly rope packing. Garlock, they had a variety of it, but --

Q.      So the premade ones were from the name brand company you're saying?

A.      Yeah.

(*Id.*, Ex. A at 49-50)

Q.      . . . . Do you recall the name of any pumps you may have worked on in engine room No. 2?

A.      I would imagine -- I know there was Nash, and there was Gould and -- gee whiz.

Q.      I'm just limiting you to engine room No. 2.

A.      Okay. I'm trying to think. I know there was Gould. That's the only two that comes to my mind right now. I know there's a couple others. I can't -- my mind is not --

Q.      Do you know what size pumps these were?

A.      The ones on the ballast pumps, I think they were run by about a 50 horsepower AC motor. So that would have made them pretty good size pumps.

Q.      Okay. Do you know if that was the Nash or the Gould or some other?

A.      I would assume it was the Nash.

Q.      Let me just go over a rule. I don't want you to assume or guess.

A.      No, I'm not assuming. You know, I'm almost sure that they were the Nash pumps.

. . . .

Q.      Okay. How many times do you think you worked on a Nash pump in engine room No. 2?

A.      Probably two or three times, you know.

(*Id.*, Ex. B at 157-58)

During a supplemental deposition on February 19, 2013, following Nash's entry of appearance in the case,[3] Mr. Walkup expressed doubts about the accuracy of his former testimony:

> Q. I want to talk to you about your time in the Navy. And one of the pumps that you identified was a ballast pump manufactured by Nash. Do I have that correct?
>
> A. You have it correct, but I'm not a hundred percent sure about it being Nash. So I have thought about it and thought about it, and I'm not a hundred percent sure it would have been a Nash.
>
> Q. Okay. So just so we're on the same page then, as you sit here today, you recall the two ballast pumps in the engine room but you're not sure who made those pumps?
>
> A. I'm not a hundred percent sure. But the more I think about it -- and it's been so many years ago -- I'm not real sure.
>
> Q. Okay.
>
> A. I've got a good idea who manufactured them, but I'm not a hundred percent sure.
>
> Q. Okay.
>
> Q. Then am I correct to say that you can't tell me what pumps Nash manufactured?
>
> A. No, I cannot. I really can't.
>
> Q. And as a result you would not be able to tell me what they looked like; is that correct?
>
> A. I have seen the Nash pumps -- that's what I remember seeing. But to honestly sit here and say I worked on one, I can't. But I do know what they -- they were mostly for vacuum, I think. I'm not a hundred percent sure. . . . And I'll be honest with you, I know when I first said that I've worked on the Nash pumps -- I guess I was thoroughly confused on what I was trying to remember. But I'm going back almost, almost 55 years.
>
> Q. Okay. I understand. And like you were previously telling me, I just want your best recollection. And I understand this has been quite some time since you've been in the Navy.
>
>         So you don't have a recollection of working on the Nash pumps. Do you have a recollection of anyone else working on a Nash pump while you were present?

. . . .

---

[3] When Mr. Walkup was initially deposed in August 2012, Nash (among other defendants) had not been served with process and was not aware of the deposition. (*See* D.I. 208 at 2) Thus, Mr. Walkup was tendered for a supplemental deposition on February 19, 2013 so the newly-added defendants would have an opportunity to examine him. (*Id.*)

A.     I'm sure some of my proteges worked on them. But I can't -- to really put a definite finger on, I can't do it here because I can't do it and be honest with you.

(D.I. 208, Ex. 1 at 33-35)

Plaintiffs also submitted an unauthenticated document purporting to show the presence of Nash pumps aboard the USS Lorain County. (*See* D.I. 266, Ex. C) The document is entitled "Trials Report," and is apparently based on an inspection of the USS Lorain County performed by the "Board of Inspection and Survey" in September 1958. (*Id.*) The document indicates that the following equipment, manufactured by "Nash," was installed on the USS Lorain County: one Fresh Water Priming Pump, and six Salt Water Pump Priming Units.[4] (*Id.*)

## 2. Defendant Buffalo Pumps

Mr. Walkup did not identify Buffalo Pumps as a manufacturer of asbestos products or otherwise at any point during his depositions.

The only evidence relating to Buffalo Pumps are unauthenticated documents purporting to show that Buffalo Pumps manufactured some of the equipment aboard the USS Lorain County (*see* D.I. 268, Ex. B), and that such equipment was installed in the areas of the ship where Mr. Walkup worked (*see id.*, Ex. C). The first document is entitled "Trials Report," and appears to be part of the same record discussed previously in the context of Nash. (*Id.*, Ex. B) The document reflects that in September 1958, the following equipment, manufactured by "Buffalo," was present on the USS Lorain County: two Distiller Brine Overboard Pumps, two Distiller Distillate Pumps, two Distiller First Effect Tube Nest Drain Pumps, and two Ballast Pumps. (*Id.*) The second document contains diagrams that purport to show the layout of equipment in the ship's

---

[4] Plaintiffs submitted a similar "Trials Report" document, albeit attached to their brief opposing Buffalo Pumps' motion for summary judgment, which indicates the presence of additional equipment, manufactured by "Nash," aboard the USS Lorain County, namely, one Clean Ballast Pump Priming Unit. (*See* D.I. 268, Ex. B)

6

engine room number four and "pump & valve control room." (*Id.*, Ex. C) However, the text within the diagrams, which identifies the individual pieces of equipment depicted, is largely incomprehensible. (*See id.*)

## III.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Pursuant to Rule 56(c)(1), a party asserting that a fact is genuinely disputed must support its contention either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all

7

reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). However, the existence of some evidence in support of the nonmoving party may not be sufficient to deny a motion for summary judgment. Rather, there must be enough evidence to enable a jury reasonably to find for the nonmoving party on the issue. *See Anderson*, 477 U.S. at 249. If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

## IV.   DISCUSSION

### A.  Applicable Law

The parties agree that maritime law should apply to Plaintiffs' claims relating to Mr. Walkup's asbestos exposure that allegedly occurred while he served in the U.S. Navy.[5] (D.I. 183)

The pending motions for summary judgment are based on arguments relating to product identification. Specifically, Defendants contend individually that summary judgment should be granted because Plaintiffs have not established causation. (*See* D.I. 208 at 2, 3; D.I. 239 at 2, 4)

In order to establish causation in an asbestos claim under maritime law, a plaintiff must show, for each defendant, that "(1) he was exposed to the defendant's product, and (2) the

---

[5] In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), the Supreme Court defined these tests as follows:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

*Grubart*, 513 U.S. at 534 (internal citations omitted). *See also Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131-32 (3d Cir. 2002).

8

product was a substantial factor[6] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. Appx. 371, 375 (6th Cir. 2001)). Other courts in this Circuit recognize a third element and require a plaintiff to "show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged."[7] *Abbay v. Armstrong Int'l, Inc.*, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012).

"In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time."[8] *Abbay*, 2012 WL 975837, at *1 n.1 (citing *Stark*, 21 F. Appx. at 376).

On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient to establish causation. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. Appx. at 376). "Rather, the plaintiff must show 'a high enough level of exposure that an

---

[6] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

[7] The majority of federal courts have held that, under maritime law, a manufacturer has no liability for harms caused by, and no duty to warn about hazards associated with, a product it did not manufacture or distribute. *See Dalton v. 3M Co.*, 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013) (citing cases); *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012).

[8] However, "'*substantial* exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury.'" *Stark*, 21 F. Appx. at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)).

9

inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at \*1 n.1 (quoting *Lindstrom*, 424 F.3d at 492). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict products liability." *Stark*, 21 F. Appx. at 376 (citations omitted).

## B. Analysis of Defendants' Summary Judgment Motions

### 1. Defendant Nash

The court should grant Nash's motion for summary judgment because Plaintiffs have failed to establish that Nash's product was a substantial factor in causing Mr. Walkup's injuries. *See Lindstrom*, 424 F.3d at 492. In his first deposition, Mr. Walkup testified that he remembered working on a Nash ballast pump "two or three times" in engine room number two. (D.I. 266, Ex. B at 157-58) In a subsequent deposition, however, Mr. Walkup testified that he could not be "a hundred percent sure" about having worked with a Nash pump. (D.I. 208, Ex. 1 at 33-35) In fact, Mr. Walkup acknowledged his prior identification of Nash pumps and admitted that he "was thoroughly confused on what [he] was trying to remember." (*Id.*, Ex. 1 at 35) He did not have a present recollection of working on a Nash pump at any time, nor did he recall working alongside anyone else performing work on a Nash pump. (*See id.*, Ex. 1 at 34-35) Consequently, Plaintiffs are unable to identify Nash as a manufacturer of any pump that Mr. Walkup worked on during the course of his service on the ship, and Mr. Walkup's testimony is insufficient to establish a genuine issue of material fact.[9]

---

[9] *See Stevens v. 3M Bus. Prods. Sales*, 2011 WL 6444950, at \*1 n.1 (E.D. Pa. July 26, 2011) ("Plaintiff cannot create an issue of material fact by citing to inconsistencies in [his] testimony.").

On a similar factual record in the MDL No. 875 – the multidistrict asbestos products liability litigation[10] – District Judge Robreno granted summary judgment in favor of a pump manufacturer where, as here, the Plaintiffs could not meet the *Lindstrom* standard for causation:

> Initially, in his deposition, Mr. Delatte testified that he remembered working with Buffalo pumps; however, on cross-examination, Mr. Delatte testified that he "couldn't say" whether he worked with Buffalo pumps. He also testified that he could not recall any number of times he worked with Buffalo pumps. Given that this is Plaintiffs' only offered product identification testimony, Plaintiffs have failed to show that any Buffalo Pump products were a substantial contributing factor to Mr. Delatte's development of asbestosis. Mr. Delatte could not definitively testify that he worked with a Buffalo pump on even one occasion. Accordingly, Defendant's Motion for Summary Judgment is granted.

*Delatte v. A.W. Chesterton Co.*, 2011 WL 11439127, at *1 n.1 (E.D. Pa. Feb. 28, 2011).

Plaintiffs attempt to cure the deficiencies in their opposition to Nash's pending motion by submitting, without a declaration, previously undisclosed (in the pending litigation) equipment records and schematics of an engine room for the ship in issue. (*See* D.I. 266, Ex. C; D.I. 268, Exs. B, C) At oral argument, Plaintiffs represented that the documents were a matter of public record.[11] Plaintiffs argue that the documents show that Nash pumps were present on the USS Lorain County. However, the records do not explicitly identify the equipment as being one and the same as the "pumps" or "ballast pump" to which Mr. Walkup referred, nor do the documents show the precise location of the listed equipment on board the ship. While all reasonable inferences must be drawn in favor of the non-movant, the nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon

---

[10] "For approximately two decades, all asbestos-related personal injury and wrongful death actions were consolidated in the Eastern District of Pennsylvania as MDL No. 875. Judge Eduardo Robreno has presided over MDL No. 875 since 2008." *Joyner v. A.C. & R. Insulation Co.*, 2013 WL 877125, at *4 n.6 (D. Md. Mar. 7, 2013) (citing *In re Asbestos Prods. Liab. Litig. (No. VI)*, 830 F. Supp. 2d 1377, 1377-78 (J.P.M.L. 2011)).

[11] Plaintiffs have not identified the specific public record or provided the source to enable the court to verify Plaintiffs' representation. The court has, nonetheless, considered the records for purposes of deciding the pending motions.

11

inference. Instead, inferences must be supported by facts in the record, not by speculation or conjecture. *See Leonard v. Stemtech Health Scis., Inc.*, 2011 WL 6046701, at \*8 (D. Del. Dec. 5, 2011) (citations omitted).

### 2. Defendant Buffalo Pumps

I recommend that the court grant Buffalo Pumps' motion for summary judgment.

At the outset, it should be noted that there is no dispute that Mr. Walkup did not identify Buffalo Pumps as a manufacturer of asbestos products or otherwise at any point during his depositions.

Buffalo Pumps argues that summary judgment should be granted because Plaintiffs have not shown that Mr. Walkup was exposed to asbestos from its products. Specifically, Buffalo Pumps contends:

> there is no evidence or testimony establishing that Mr. Walkup was ever in the presence of a Buffalo pump; even if assuming he was, there is no evidence in the record that any work was being performed on that pump, or if that work resulted in the production of any airborne asbestos; and even if such work was ongoing, there is no evidence that the materials from which the asbestos originated, if the products even contained asbestos, were supplied by Buffalo . . . .

(D.I. 239 at 6)

Plaintiffs counter that circumstantial evidence establishes that Mr. Walkup was exposed to asbestos from products manufactured by Buffalo Pumps. According to Plaintiffs:

> Ship records . . . clearly show that Buffalo's ballast pumps were on board, and located in the engine room and rooms on either side of the engine room. Specifically, the Trials Report of the USS Lorain County conducted in September 1958 document that the ship had 2 Buffalo Ballast Pumps, 2 Buffalo Distiller Brine Overboard Pumps, 2 Buffalo Distiller Distillate Pumps, and 2 Buffalo Distiller First Effect Tube Nest Drain Pumps.
>     Furthermore, Buffalo has admitted in prior interrogatories to using asbestos-containing gaskets and packing materials in its pumps.
>     Mr. Walkup's testimony describing the ballast pumps, which the ship records document as manufactured by Buffalo, as well as [Buffalo Pumps'] prior interrogatory responses, are sufficient to defeat a motion for summary judgment.

(D.I. 268 at 4 (internal citations omitted))

Contrary to Plaintiffs' assertion, the evidence is insufficient to withstand a motion for summary judgment, even when viewed in the light most favorable to Plaintiffs. The documents produced by Plaintiffs show that ballast pumps, allegedly manufactured by Buffalo Pumps, were located in the ship's "control room" and engine room number four. (*See* D.I. 268, Ex. C) Importantly, however, Mr. Walkup did not testify that he worked on pumps in engine room number four (*see* D.I. 280, Ex. B at 157-58),[12] nor did he testify about performing any work in a control room. Even assuming the records could properly serve to support Plaintiffs' position,[13] they do nothing more than show the mere presence of Buffalo Pumps' products aboard the USS Lorain County.

Plaintiffs have failed to show beyond mere speculation and conjecture that Mr. Walkup was exposed to asbestos from products manufactured or supplied by Buffalo Pumps. Consequently, the court should grant Buffalo Pumps' motion for summary judgment. *See Lindstrom*, 424 F.3d at 492 ("[A] mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient [to establish causation].").

## V. CONCLUSION

For the foregoing reasons, I recommend that the court grant Nash's motion for summary judgment, and grant Buffalo Pumps' motion for summary judgment.

---

[12] In contrast, Mr. Walkup testified that he worked on ballast pumps located in engine room *number two*. (*See* D.I. 280, Ex. B at 157-58) Although Mr. Walkup performed work in engine room number four, it was limited to boilers, evaporators, and valves. (*See id.*, Ex. B at 157-58, 162-66)

[13] Buffalo Pumps asserts that the purported naval records offered by Plaintiffs are incomplete and unauthenticated, and thus, cannot be relied upon to defeat a motion for summary judgment. (*See* D.I. 280 at 8-10 (citing 28 U.S.C. § 1746; Fed. R. Civ. P. 56(c)(1)(A); *Woloszyn v. County of Lawrence*, 396 F.3d 314, 323 (3d Cir. 2005); *Faddish v. General Electric Co.*, 2010 WL 4146108, at *6 (E.D. Pa. Oct. 20 2010))).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.

Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10)

pages each. The failure of a party to object to legal conclusions may result in the loss of the right

to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. Appx. 924, 925 n.1

(3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: June 4, 2014

Sherry R. Fallon
United States Magistrate Judge

14